IN RE NATIONAL LLOYDS INSURANCE COMPANY, Wardlaw Claims Service, Inc., and Ideal Adjusting, Inc., Relators

No. 15-0591

Supreme Court of Texas.

Argued February 7, 2017

OPINION DELIVERED: June 9, 2017

Rehearing Denied December 8, 2017

Victor V. Vicinaiz, Roerig Oliveira & Fisher LLP, McAllen, Wade C. Crosnoe,

Thompson Coe Cousins & Irons, L.L.P., Austin, Zuleida Lopez-Habbouche, Roerig, Oliveira & Fisher, L.L.P., McAllen, for Amicus Curiae Germania Farm Mutual Insurance Association.

Jennifer Bruch Hogan, James C. Marrow, Richard P. Hogan Jr., Hogan & Hogan, Houston, Amber Lynn Anderson, John Steven Mostyn, Molly Kathleen Bowen, Mostyn Law Firm, Houston, Gilberto Hinojosa, Law Offices of Gilberto Hinojosa & Associates, P.C., Brownsville, Randal G. Cashiola, Cashiola & Bean, Beaumont, for Real Party in Interest.

R. Casey Low, Elizabeth K. Marcum, Pillsbury Winthrop Shaw Pittman LLP, Austin, Dale Wainwright, Greenberg Traurig, LLP, Austin, Greg C. Wilkins, Monica L. Wilkins, Orgain Bell & Tucker, LLP, Beaumont, Robert L. Florance IV, Pope Hardwicke Christie Schell Kelly & Taplett, L.L.P., Fort Worth, Alasdair A. Roberts, Scot Graves Doyen, Doyen Sebesta, Ltd., LLP, Houston, for Relator.

Justice Guzman delivered the opinion of the Court, in which Chief Justice Hecht, Justice Green, Justice Willett, Justice Devine, and Justice Brown joined.

The discovery dispute in this mandamus proceeding arises in the context of multi-district litigation involving allegations of underpaid homeowner insurance claims. The issue is whether a party's attorney-billing information is discoverable when the party challenges an opposing party's attorney-fee request as unreasonable or unnecessary but neither uses its own attorney fees as a comparator nor seeks to recover any portion of its own attorney fees. We hold that, under such circumstances, (1) compelling en masse production of a party's billing records invades the attorney work-product privilege; (2) the privilege is not waived merely because the

party resisting discovery has challenged the opponent's attorney-fee request; and (3) such information is ordinarily not discoverable.[1]

To the extent factual information about hourly rates and aggregate attorney fees is not privileged, that information is generally irrelevant and nondiscoverable because it does not establish or tend to establish the reasonableness or necessity of the attorney fees an opposing party has incurred.[2] A party's litigation expenditures reflect only the value that party has assigned to litigating the matter, which may be influenced by myriad party-specific interests. Absent a fee-shifting claim, a party's attorney-fee expenditures need not be reasonable or necessary for the particular case. Barring unusual circumstances, allowing discovery of such information would spawn unnecessary case-within-a-case litigation devoted to determining the reasonableness and necessity of attorney-fee expenditures that are not at issue in the litigation. This is not a proper discovery objective. We therefore conditionally grant mandamus relief and direct the trial court to vacate its discovery order.

## I. Factual and Procedural Background

Following two hail storms that struck Hidalgo County in 2012, insured homeowners sued various insurers and claims adjustors, alleging underpayment of insured property-damage claims. The lawsuits were consolidated into a single multidistrict litigation (MDL) court for pretrial proceedings, including discovery.[3]

The discovery dispute in this mandamus proceeding involves four MDL cases in which individual homeowners sued National Lloyds Insurance Co., Wardlaw Claims Service, Inc., and Ideal Adjusting, Inc. (collectively, the insurer),[4] asserting statutory, contractual, and extra-contractual claims. Among other damages, the homeowners seek attorney fees incurred in prosecuting their statutory and contractual claims. In addition to assailing the merits of the homeowners' liability claims, the insurer asserts the homeowners' attorney-fee claims are excessive for a case of comparable complexity in the relevant locality.

A mere two months before trial, and nearly a year after the parties served MDL master discovery requests, the homeowners requested a trial continuance and sought leave to serve additional discovery regarding the insurer's attorney-billing information. Though the insurer is not making a claim for attorney fees,[5] the homeowners submitted (1) three interrogatories requesting hourly rates, total amount billed, and total reimbursable expenses; and (2) four requests for production seeking all billing invoices; payment logs, ledgers, and payment summaries; au-

---

1. *See* Tex. R. Civ. P. 192.5(b).

2. *See* Tex. R. Evid. 401 (defining relevant evidence as having "any tendency to make a fact more or less probable than it would be without the evidence"); Tex. R. Civ. P. 192.3 (extending the scope of discovery to relevant nonprivileged information, including relevant evidence that is inadmissible but "reasonably calculated to lead to the discovery of admissible evidence").

3. *See* Tex. R. Jud. Admin. 13, *reprinted in* Tex. Gov't Code, tit. 2, subtit. F app.

4. The homeowners also sued individual adjusters who are not parties to this proceeding.

5. The insurer acknowledges it made an offer of settlement, which could result in the insurer recovering attorney fees in the future. *See* Tex. R. Civ. P. 167. If that event occurs, however, the civil-procedure rules permit the "party against whom litigation costs are to be awarded" to seek leave to conduct discovery concerning the reasonableness of the costs to be recovered. Tex. R. Civ. P. 167.5(b).

dits; and any documents pertaining to flat-rate billing.[6] The homeowners asserted additional discovery was warranted "in light of" expert testimony in *Amaro v. National Lloyds Insurance Co.*,[7] the first MDL hailstorm case to proceed to a jury verdict.

According to the homeowners, the insurer's attorney fees and billing information are discoverable in the present cases because the insurer's counsel, Scot Doyen, testified as an attorney-fee expert in *Amaro* and admitted on cross-examination—albeit over objection—that an opposing party's fees could be considered as "a factor" in determining a reasonable fee recovery. Doyen also used his law firm's billing practices as an example of a proper way to allocate attorney fees to avoid an artificially inflated fee claim in MDL cases.[8] Prior

6. The specific discovery requests at issue are as follows:
Interrogatories:
(1) State the hourly rate of any and all attorneys who have provided legal services to this Defendant in this case;
(2) State the total amount billed by each law firm providing legal services to this Defendant in this case up to and including the time of trial; and
(3) State the total amount of reimbursable expenses incurred by any law firm providing legal services to this Defendant in this case up to and including the time of trial.
Requests for Production:
(1) Produce all billing invoices received by Defendant and/or any of the firms the named attorneys are affiliated with or employed by, in connection with this case;
(2) Produce all payment logs, ledgers, or payment summaries showing all payments paid to Defendants' attorneys and/or any of the firms that the named attorneys are affiliated with or employed by, in connection with this case;
(3) [withdrawn discovery request not at issue in this appeal];
(4) Please produce all documents that show the flat rate, if any, being paid to Defense Counsel and/or any of the firms that the named attorneys are affiliated with or employed by, in connection with their services on this case; and
(5) Please produce all documents related to audits of the billing and/or invoices of Defense Counsel and/or any of the firms that the named attorneys are affiliated with or employed by, which were performed on behalf of Defendant in regards to the attorney services received by Defendant. This request is limited to the last five (5) years. [The trial court further limited this request to "documents regarding the specific case in which the request is propounded"].

7. Cause No. C-0304-13-H (206th Dist. Ct., Hidalgo County, Tex. Feb. 27, 2015).

8. Doyen initially testified:
Well, I think that we have to look at the time components that are in some of these different entries. And I will tell you that ... I don't [necessarily] take exception with ... the amount of time that is in a given entry as much as I do a couple of them that I think the time spent should have been allocated across more than just the Amaro file.
. . . .
The Motion to Remand was filed in the Amaro case. It was also filed in about a hundred other cases. When the lawyer shows up to attend that hearing, and what have to do in our fee bills [sic], for instance, the four hours for attending the hearing, I don't have a problem with. That's ... a reasonable expenditure of time. But, for instance, [on] my side, the lawyer that I have there has to take that and then prorate that out over a number of files. Because you can't bill that four hours to every file, it would be as though you worked four hundred hours for that hearing and ... that would never be reasonable. So you have to take that time and prorate it out. We do it on our side....
As a point of clarification, Doyen later added:
On the motion to remand, I think it was a four-hour hearing that I was talking about earlier, what struck me about this when I reviewed it was we prorated our time across every case on the appendix to which that—those motions apply. And I cannot say that the [plaintiffs' attorneys] did that the same way. If, in fact, they did not and only billed it to the file that was for that hearing, then the four hours would be appropriate because they did have somebody there for that period of time. And I don't know how it was billed inside their system,

to Doyen's testimony in *Amaro*, he had been designated in the underlying MDL case as a testifying expert in opposition to the homeowners' attorney-fee requests.

Based on the record in *Amaro*, the homeowners contend Doyen's expert testimony in these cases will necessarily be based on his experience as the insurer's attorney in the same proceedings and, more to the point, he has admitted that an opposing party's fees are relevant to the disputed attorney-fee issues. Accordingly, the homeowners argue that information about the insurer's attorney-fee expenditures is discoverable and relevant to the attorney-fee dispute.

The insurer objects on the basis that the requested discovery is overly broad and seeks information that is both irrelevant and protected by the attorney-client and work-product privileges. With regard to relevancy, the insurer principally relies on its stipulation that it "will not use its own billing invoices received from its attorneys; payment logs, ledgers, or payment summaries showing payments to its attorneys; or the hourly fees or flat rates being paid to its attorneys; audits of the billing and invoices of its attorneys to contest the reasonableness of [the homeowners'] attorney's fees."

After two non-evidentiary hearings, a discovery special master recommended

that (1) an opponent's attorney-billing information is, as a general proposition, relevant to the reasonableness of an attorney-fee request in the same case; (2) to the extent the discovery requests in this case seek material from an expert witness on the attorney-fee issue, the information falls within the scope of permissible discovery under Texas Rule of Civil Procedure 192.3(e); (3) some of the discovery requests should be more narrowly tailored, but the insurer's objections to the discovery requests as modified should be overruled; and (4) "[s]pecific records may be redacted for content protected by an appropriate privilege." Adopting these recommendations, the MDL pretrial court ordered the insurer to respond to the discovery requests.

The court of appeals denied the insurer's petition for mandamus relief.[9] While the court acknowledged that an opposing party's attorney-billing information may be irrelevant in a given case,[10] the court concluded the discovery order was not an abuse of discretion in the underlying cases because (1) an opposing party's attorney fees are germane to at least two factors that inform the "reasonable and necessary" attorney-fee inquiry, as set forth in *Arthur Andersen & Co. v. Perry Equipment Corp.*;[11] (2) the *Arthur Andersen* factors are explicitly nonexclusive;[12] (3) the insurer's designated expert witness

if—and they've put it on here with regard to it being this file and this file alone. If it was billed there, then I think that's completely appropriate to do. And ... I don't have any indication [that] they did overbill it. And if I created that impression, then I apologize for that. But what struck me was the way we did it. We prorated it out across every one, but it has occurred to me that they may not have done it that way. They may have gone and billed it to just that one. If that's the case, then it's certainly appropriate to do so.

9. *In re National Lloyds Insurance Company*, 2015 WL 4380929, at *6, (Tex. App.—Corpus Christi 2015).

10. *Id.* at *4 (citing *MCI Telecomms. Corp. v. Crowley*, 899 S.W.2d 399, 403-04 (Tex. App.—Fort Worth 1995, orig. proceeding)).

11. *Id.* at *5 (citing 945 S.W.2d 812, 819 (Tex. 1997) and TEX. DISCIPLINARY R. PROF'L CONDUCT 1.04(a), *reprinted in* TEX. GOV'T CODE tit. 2, subtit. G, app. A).

12. *Id.* at *4 (citing *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 761 (Tex. 2012)).

previously testified he based his opinion on his own personal experience in defending the same case in which he was testifying as an expert;[13] (4) the requested information is within the permissible scope of expert-witness discovery, as provided by Rule 192.3(e);[14] and (5) the insurer produced no evidence that redaction would be insufficient to protect its privileges.[15]

In this original proceeding, the insurer primarily relies on several lower-court cases declaring information about a party's attorney-fee expenditures is "patently irrelevant" to an opposing party's attorney-fee claim.[16] The insurer maintains that the *Arthur Andersen* factors do not contemplate discovery of an opposing party's attorney-billing information, arguing those factors are textually directed only to evidence about the claimant's attorney fees. The insurer also reasserts its privilege objections and disputes that its attorney fees are at issue in this litigation by virtue of the *Amaro* litigation.

Relying on authority from other jurisdictions, the homeowners argue trial courts have discretion to order disclosure of an opposing party's attorney-fee information and could permissibly compel production in this case. In addition to citing counsel's role as a testifying expert in this case and *Amaro* as supporting the trial court's discovery order, the homeowners rely on the concurring opinion in *El Apple I, Ltd. v.*

*Olivas*,[17] which describes an opposing party's attorney fees as a "surer indicator[ ]" of the reasonableness of a fee request. With regard to privilege, the homeowners point to a dearth of evidence that redaction would be ineffective to protect any applicable privileges and argue, in the alternative, that attorney-billing information is not privileged as a matter of law or on the record before the Court.

Germania Farm Mutual Insurance Association filed an amicus brief supporting the insurer. Germania is a defendant in other cases pending before the MDL pretrial court and asserts the plaintiffs in those cases are seeking nearly identical discovery from Germania even though "Germania's counsel has not testified about attorney's fees in any MDL case or otherwise done anything to put Germania's attorney's fees at issue."

## II. Discussion

### A. Standard of Review

 A trial court generally has discretion to determine the scope of discovery.[18] However, "[a] discovery order that compels production beyond the rules of procedure is an abuse of discretion for which mandamus is the proper remedy."[19] Under our procedural rules, the scope of discovery extends to "any matter that is not privileged and is relevant to the sub-

---

**13.** *Id.* at *4-5.

**14.** *Id.* at *5.

**15.** *Id.*

**16.** *See In re Tex. Mut. Ins. Co.*, 358 S.W.3d 869, 872 n.3 (Tex. App.—Dallas 2012, orig. proceeding); *In re AIG Aviation (Tex.), Inc.*, No. 04-04-00291-CV, 2004 WL 1166560, at *1 (Tex. App.—San Antonio May 26, 2004, orig. proceeding) (mem. op.); *MCI Telecomms. Corp. v. Crowley*, 899 S.W.2d 399, 403-04 (Tex. App.—Fort Worth 1995, orig. proceed-

ing); *see also Duininck Bros., Inc. v. Howe Precast, Inc.*, No. 4:06-CV-441, 2008 WL 4411641, at *2 (E.D. Tex. Sept. 23, 2008).

**17.** 370 S.W.3d at 766 (Hecht, J., concurring).

**18.** *In re CSX Corp.*, 124 S.W.3d 149, 152 (Tex. 2003) (orig. proceeding).

**19.** *In re Nat'l Lloyds Ins. Co.*, 507 S.W.3d 219, 224 (Tex. 2016) (orig. proceeding) (quoting *In re Nat'l Lloyds Ins. Co.*, 449 S.W.3d 486, 488 (Tex. 2014) (orig. proceeding)).

ject matter of the pending action."[20] Mandamus relief is appropriate when, as in this case, a trial court compels production of irrelevant information or information that is relevant but privileged.[21] Because either condition suffices to warrant mandamus relief, we first consider whether the requested information is privileged.

## B. Privilege

The insurer asserted two privileges in response to the discovery requests: the attorney-client privilege and attorney work-product privilege. Analogizing to our analysis in *National Union Fire Insurance Co. v. Valdez*,[22] we hold that a request to produce all billing records invades a party's work-product privilege because, cumulatively, billing records constitute a mechanical compilation of information that, at least incidentally, reveals an attorney's strategy and thought processes.

### 1. Legal-Representation Privileges

The attorney-client privilege protects communications between attorney and client that are (1) not intended to be disclosed to third parties and (2) made for the purpose of facilitating the rendition of professional legal services.[23] The privilege promotes free discourse between attorney and client, thereby advancing the effective administration of justice.[24]

■ "The work product privilege is broader than the attorney-client privilege."[25] The discovery rules define "work product" as:

(1) material prepared or mental impressions developed in anticipation of litigation or for trial by or for a party or a party's representatives . . .; or

(2) a communication made in anticipation of litigation or for trial between a party and the party's representatives or among a party's representatives, including the party's attorneys [and] consultants.[26]

Certain matters are expressly excluded from the definition of "work product," however, and are not protected from discovery even if made or prepared in anticipation of litigation or for trial.[27] The carve-outs include "information discoverable under Rule 192.3 concerning experts, trial witnesses, witness statements, and contentions."[28]

■ "The primary purpose of the work product rule is to shelter the mental processes, conclusions, and legal theories of the attorney, providing a privileged area within which the lawyer can analyze and prepare his or her case."[29] Core work

20. Tex. R. Civ. P. 192.3(a); *see also In re CSX Corp.*, 124 S.W.3d at 152.

21. *See, e.g., In re Nat'l Lloyds Ins. Co.*, 507 S.W.3d at 224-25 (granting mandamus relief when trial court ordered discovery of irrelevant information); *In re Living Ctrs. of Tex., Inc.*, 175 S.W.3d 253, 256 (Tex. 2005) (orig. proceeding) (granting mandamus relief when trial court ordered discovery of privileged information).

22. 863 S.W.2d 458, 460-61 (Tex. 1993) (orig. proceeding).

23. Tex. R. Evid. 503(a)(5), (b)(1).

24. *Paxton v. City of Dall.*, 509 S.W.3d 247, 250 (Tex. 2017).

25. *In re Bexar Cty. Crim. Dist. Attorney's Office*, 224 S.W.3d 182, 186 (Tex. 2007) (orig. proceeding).

26. Tex. R. Civ. P. 192.5(a).

27. Tex. R. Civ. P. 192.5(c)(1)–(5).

28. Tex. R. Civ. P. 192.5(c)(1).

29. *Owens–Corning Fiberglas Corp. v. Caldwell*, 818 S.W.2d 749, 750 (Tex. 1991) (orig. proceeding).

product—work product that contains "the mental impressions, opinions, conclusions, or legal theories" of an attorney or an attorney's representative—is not discoverable.[30] A trial court may order disclosure of noncore work product—defined as "[a]ny other work product" that is not core work product—only if the requesting party shows substantial need and undue hardship.[31] In such a case, the trial court may order disclosure even if doing so "incidentally discloses by inference attorney mental processes otherwise protected [as core work product]," but "the court must—insofar as possible—protect against disclosure of the mental impressions, opinions, conclusions, or legal theories not otherwise discoverable."[32]

■ The party asserting a privilege in opposition to a discovery request "must establish by testimony or affidavit a prima facie case for the privilege," although "[t]he party need produce 'only the minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true.'"[33] In limited circumstances, "the documents themselves may, standing alone, constitute sufficient proof" to establish a claimed privilege.[34] Additionally, we have held that "evidence may not always be necessary to support a claim of protection from discovery."[35]

## 2. The Requested Documents, Collectively, Are Work Product

■ We have described the work-product privilege as encompassing "two related but different concepts":

> First, the privilege protects the attorney's thought process, which includes strategy decisions and issue formulation. . . . Second, the privilege protects the mechanical compilation of information to the extent such compilation reveals the attorney's thought processes.[36]

Billing records constitute "communication[s] made in anticipation of litigation or for trial between a party and the party's representatives or among a party's representatives."[37] Moreover, as a whole, billing records represent the mechanical compilation of information that reveals counsel's legal strategy and thought processes, at least incidentally.

Conceptually, the matter is similar to the issue we considered in *National Union Fire Insurance Co. v. Valdez*, which involved a discovery request for an attorney's entire litigation file.[38] We observed that "[t]he organization of the file, as well as the decision as to what to include in it, necessarily reveals the attorney's thought processes concerning the prosecution or defense of the case" and that, if such information were discoverable, an attorney

---

**30.** Tex. R. Civ. P. 192.5(b)(1).

**31.** Tex. R. Civ. P. 192.5(b)(2).

**32.** Tex. R. Civ. P. 192.5(b)(3), (4).

**33.** *In re Mem'l Hermann Hosp. Sys.*, 464 S.W.3d 686, 698 (Tex. 2015) (orig. proceeding) (internal quotations omitted) (quoting *In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d 218, 223 (Tex. 2004) (orig. proceeding)); *see* Tex. R. Civ. P. 193.4.

**34.** *State v. Lowry*, 802 S.W.2d 669, 671 (Tex. 1991) (orig. proceeding).

**35.** *In re Union Pac. Res. Co.*, 22 S.W.3d 338, 341 (Tex. 1999) (orig. proceeding).

**36.** *Occidental Chem. Corp. v. Banales*, 907 S.W.2d 488, 490 (Tex. 1995) (orig. proceeding).

**37.** Tex. R. Civ. P. 192.5(a)(2).

**38.** 863 S.W.2d 458, 460-61 (Tex. 1993) (orig. proceeding).

would "be restricted in the organization and maintenance of his or her files by the prospect that they might have to be revealed in their entirety." [39] We thus held (1) an attorney's litigation file goes to the heart of the work-product privilege, (2) "an attorney's selection and ordering of documents in anticipation of litigation is protected work product even where the individual documents are not privileged," and (3) a party is therefore prevented "from requesting the entire file, which is almost certain to encompass numerous irrelevant and immaterial documents ... as well as privileged information." [40]

A request for all billing invoices, payment logs, payment ledgers, payment summaries, documents showing flat rates, and audits is analogous to the request in *Valdez* for an attorney's entire litigation file. These billing records—which are generated in anticipation of litigation and trial—are "almost certain to encompass numerous irrelevant and immaterial documents." [41] When a party neither seeks to recover its own attorney fees nor attempts to use its attorney-billing records to challenge the opposing party's attorney fees, the party's attorney should not be restricted in the preparation or presentment of his or her billing records by the prospect that they might have to be revealed in their entirety. Further, these billing records, which are useful to the requesting party only if they describe what the attorney has done in the case, reveal the attor-

ney's thought processes concerning the prosecution or defense of the case.

For example, billing records reveal when and where attorneys strategically deploy a client's resources; which issues were addressed by experienced lawyers as compared to less experienced counsel; the subject-matter expertise of an attorney working on a particular aspect of the case; and who was hired as consultants—including consulting experts and jury consultants—and when. This information provides detailed information regarding a party's litigation decisions and also illuminates the relative significance of or concern about particular matters. Especially when a party is a repeat litigant, as the insurer is here, decisions revealed through billing records represent strategic choices and are pieces of "an overall legal strategy for all the cases in which it is involved," which a party must be allowed to develop without intrusion. [42] Discovery of billing records in their entirety would provide a roadmap of how the insurer plans to litigate not only this particular case but also other MDL cases.

The homeowners argue that redaction of privileged material, which the trial court allowed in this case, should be sufficient to protect any privileged information. However, in *Valdez*, we held the attorney's entire litigation file is privileged per se, regardless of whether unprivileged information is included in the file. [43] We conclude that *Valdez*'s core analysis applies here as well and logically applies even if privileged in-

---

39. *Id.* at 460.

40. *Id.* at 460-61; *see also Banales*, 907 S.W.2d at 490.

41. *Valdez*, 863 S.W.2d at 461.

42. *Owens–Corning Fiberglas Corp. v. Caldwell*, 818 S.W.2d 749, 751 (Tex. 1991) (orig. proceeding).

43. *See* 863 S.W.2d at 460 ("[E]ven if some of the documents in the law firm files would not

otherwise be privileged, production of an attorney's entire file necessarily reveals the attorney's mental processes."); *see also Lewis v. Wittig*, 877 S.W.2d 52, 57 (Tex. App.—Houston [14th Dist.] 1994, orig. proceeding) ("An attorney's 'entire file' is work-product privileged *per se*, subject to waiver through offensive use. This, we believe, is the central holding of *Valdez*.").

formation within the requested records is redacted.

■ We also conclude that redacting privileged information—such as the specific topics researched or the descriptions of the subject of phone calls—would be insufficient as a matter of law to mask the attorney's thought processes and strategies. The chronological nature of billing records reveals when, how, and what resources were deployed. With this knowledge, a party in the same proceeding could deduce litigation strategy as to specific or global matters.

Aggregate fee summaries also reveal strategic choices. When litigation is pending, the discovery rules impose a duty to amend or supplement discovery throughout litigation.[44] A dramatic increase in mid-litigation spending could imply an upcoming filing or significant research expenditures related to elevated concerns over recent litigation events.[45] For these reasons, redaction would be inadequate to protect the work-product nature of the total billing information.

■ Further, objections and disputes regarding what should be redacted based on privilege would lead to collateral litigation over attorney-fee claims, with the issues likely to recur throughout the litigation as discovery is amended or supplemented. As the United States Supreme Court admonished in *Hensley v. Eckerhart*, "[a] request for attorney's fees should not result in a second major litigation."[46]

■ We therefore hold that requests for production of all billing invoices, payment logs, payment ledgers, payment summaries, documents showing flat rates, and audits invade the zone of work-product protection. Our holding does not prevent a more narrowly tailored request for information relevant to an issue in a pending case that does not invade the attorney's strategic decisions or thought processes.[47] Nor does our holding preclude a party from seeking noncore work product "upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the material by other means."[48] But, here, the record bears no evidence of either.

---

**44.** Tex. R. Civ. P. 193.5.

**45.** *See L.A. Cty. Bd. of Supervisors v. Super. Ct.*, 212 Cal.Rptr.3d 107, 386 P.3d 773, 781 (2016) ("When a legal matter remains pending and active, the privilege encompasses everything in an invoice, including the amount of aggregate fees. This is because, even though the amount of money paid for legal services is generally not privileged, an invoice that shows a sudden uptick in spending 'might very well reveal much of [a government agency]'s investigative efforts and trial strategy.' Midlitigation swings in spending, for example, could reveal an impending filing or outsized concern about a recent event." (quoting *Mitchell v. Super. Ct.*, 37 Cal.3d 591, 208 Cal.Rptr. 886, 691 P.2d 642, 646 (1984))).

**46.** 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *see also Costa v. Sears*

*Home Improvement Prods., Inc.*, 178 F.Supp.3d 108, 114 (W.D.N.Y. 2016) (concluding that requiring production of defendants' billing records to support the reasonableness of plaintiff's attorney-fee request would increase expenses, lead to various privilege objections, and result in a second major litigation that courts should endeavor to avoid).

**47.** *Cf. Valdez*, 863 S.W.2d at 461 ("Our decision today does not prevent a party from requesting specific documents or categories of documents relevant to issues in a pending case, even though some or all of the documents may be contained in an attorney's files. It does, however, prevent a party from requesting the entire file.").

**48.** Tex. R. Civ. P. 192.5(b)(2).

We acknowledge that an opposing party may waive its work-product privilege through offensive use—perhaps by relying on its billing records to contest the reasonableness of opposing counsel's attorney fees or to recover its own attorney fees.[49] But in this case, the insurer has stipulated it will not use its own billing records to contest the homeowners' attorney fees. Nor is the insurer seeking to recover its own attorney fees from the homeowners. Although the court of appeals indicated the insurer could seek attorney fees in the future based on a Rule 167 settlement offer,[50] the offer-of-settlement rule provides a process for reopening discovery to enable a party to ascertain the reasonableness of the requested costs.[51]

In describing billing records as work product when requested en masse, we do not foreclose the possibility that some or all of the information may also be protected from compelled disclosure by the attorney-client privilege.[52] But to be protected by the attorney-client privilege, the insurer must establish that the communications were confidential and made to facilitate the rendition of professional legal services to the client. The insurer failed, however, to "establish [a prima facie case for the privilege] by testimony or affidavit" or even by "only the minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true." [53]

## C. Relevance

Although we conclude the requested documents are protected by the work-product privilege, factual information is not exempt from discovery by mere inclusion within protected documents.[54] Accordingly, we must also consider whether interrogatories that request hourly rates, total amount billed, and total reimbursable expenses seek discoverable information. Though the parties disagree about wheth-

---

**49.** *See Valdez*, 863 S.W.2d at 461-62; *see also Republic Ins. Co. v. Davis*, 856 S.W.2d 158, 164 (Tex. 1993) (orig. proceeding) (holding a party may waive the attorney-client privilege through offensive use); *Owens–Corning Fiberglas Corp. v. Caldwell*, 818 S.W.2d 749, 752 (Tex. 1991) (orig. proceeding) (observing a party may waive the work-product privilege through offensive use); *see also* TEX. R. CIV. P. 192.5(c)(1) (information discoverable under Rule 192.3 concerning experts, trial witness statements, and contentions are not work product protected from discovery).

**50.** 2015 WL 4380929, at *3 (Tex. App.—Corpus Christi 2015).

**51.** TEX. R. CIV. P. 167.5(b).

**52.** *See, e.g., L.A. Cty. Bd. of Supervisors v. Super. Ct.*, 212 Cal.Rptr.3d 107, 386 P.3d 773, 781 (2016) (holding that "[w]hen a legal matter remains pending and active, the [attorney-client] privilege encompasses everything in an [attorney's] invoice, including the amount of aggregate fees"). *But see Paton v. GEICO Gen.*

*Ins. Co.*, 190 So.3d 1047, 1052 (Fla. 2016) (holding that "the entirety of the billing records are not privileged, and where the trial court specifically states that any privileged information may be redacted, the plaintiff should not be required to make an additional special showing to obtain the remaining relevant, non-privileged information").

**53.** *In re Mem'l Hermann Hosp. Sys.*, 464 S.W.3d 686, 698 (Tex. 2015) (orig. proceeding) (citing *In re Living Ctrs. of Tex.*, 175 S.W.3d 253, 261 (Tex. 2005) (orig. proceeding), and *State v. Lowry*, 802 S.W.2d 669, 671 (Tex. 1991) (orig. proceeding), and quoting *In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d 218, 223 (Tex. 2004) (orig. proceeding)); *see also* TEX. R. CIV. P. 193.4.

**54.** *Cf. Valdez*, 863 S.W.2d at 460 (noting a document is not privileged simply because it is contained in an attorney's files); *Owens–Corning*, 818 S.W.2d at 750 n.2 ("While an attorney must be allowed to work with a degree of privacy, the protection granted under the work product doctrine does not extend to facts the attorney may acquire.").

er the requested factual information is privileged, even unprivileged information is not discoverable unless the information is relevant.

■■■■ We hold the requested information is generally not relevant because (1) the opposing party may freely choose to spend more or less time or money than would be "reasonable" in comparison to the requesting party; (2) comparisons between the hourly rates and fee expenditures of opposing parties are inapt, as differing motivations of plaintiffs and defendants impact the time and labor spent, hourly rate charged, and skill required; (3) "the tasks and roles of counsel on opposite sides of a case vary fundamentally," so even in the same case, the legal services rendered to opposing parties are not fairly characterized as "similar";[55] and (4) a single law firm's fees and hourly rates do not determine the "customary" range of fees in a given locality for similar services. However, when a party uses its "own hours and rates as yardsticks by which to assess the reasonableness of those sought by [the requesting party]" or seeks to shift responsibility for those expenditures, the party places its own attorney-billing information at issue, making the information discoverable.[56]

### 1. Scope of Discovery

■■■■ The scope of discovery extends to any unprivileged information that is "relevant to the subject matter" of the pending action, even if inadmissible at tri-

al, so long as the information sought "appears reasonably calculated to lead to the discovery of admissible evidence."[57] We broadly construe the phrase "relevant to the subject matter" to provide litigants the opportunity "to obtain the fullest knowledge of the facts and issues prior to trial."[58] Evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."[59] Although the scope of discovery is broad, a request for information "must show a reasonable expectation of obtaining information that will aid the dispute's resolution."[60]

■■■■ The discovery guideposts can be summarized as follows: only relevant evidence is discoverable; relevant evidence that is privileged is not discoverable; relevant evidence that is not privileged is discoverable when (i) it is admissible or (ii) it is inadmissible but reasonably calculated to lead to the discovery of admissible evidence; and failing either of those admissibility criteria, the request for discovery may be denied even if the requested information is relevant and unprivileged.

We turn now to the pertinent inquiry: whether information about opposing counsel's hourly rates, total fees, and total reimbursable expenses is relevant and reasonably calculated to lead to the discovery of admissible evidence even when those expenditures are not independently at issue in the litigation, as is the case here.

**55.** *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 384 (5th Cir. 2011).

**56.** *Mendez v. Radec Corp.*, 818 F.Supp.2d 667, 669 (W.D.N.Y. 2011).

**57.** Tex. R. Civ. P. 192.3(a).

**58.** *Ford Motor Co. v. Castillo*, 279 S.W.3d 656, 664 (Tex. 2009) (quoting *Axelson, Inc. v. McIl-*

*hany*, 798 S.W.2d 550, 553 (Tex. 1990) (orig. proceeding)); *see also In re Nat'l Lloyds Ins. Co.*, 449 S.W.3d 486, 488 (Tex. 2014) (orig. proceeding).

**59.** Tex. R. Evid. 401.

**60.** *In re CSX Corp.*, 124 S.W.3d 149, 152 (Tex. 2003) (orig. proceeding).

### 2. Establishing Reasonable and Necessary Attorney Fees

We begin by considering the issue to which the requested information is purportedly relevant—the homeowners' claim for reimbursement of reasonable and necessary attorney fees.

■■■■ "Texas follows the American rule on attorney's fees, which provides that, generally, 'a party may not recover attorney's fees unless authorized by statute or contract.'"[61] When fee-shifting is authorized, the party seeking to recover those fees bears the burden of establishing the fees are reasonable and necessary.[62] This inquiry requires consideration of eight nonexclusive factors articulated in *Arthur Andersen & Co. v. Perry Equipment Corp.*:

1. the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly;

2. the likelihood ... acceptance of the particular employment will preclude other employment by the lawyer;

3. the fee customarily charged in the locality for similar legal services;

4. the amount involved and the results obtained;

5. the time limitations imposed by the client or by the circumstances;

6. the nature and length of the professional relationship with the client;

7. the experience, reputation, and ability of the lawyer or lawyers performing the services; and

8. whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.[63]

The homeowners cite the first and third *Arthur Andersen* factors as establishing the trial court's discretion to authorize discovery concerning the insurer's attorney-fee expenditures. The homeowners neither address the other enumerated factors nor identify any nonenumerated factor affecting the analysis in this case. But relying on the concurring opinion in *El Apple I, Ltd. v. Olivas*, the homeowners assert that a comparison of their own fees to the insurer's fees is relevant to discharging their burden of proof and is, in fact, a "surer indicator[ ]" of a reasonable fee.[64]

The insurer argues no *Arthur Andersen* factor is textually or practically directed to an opposing party's attorney fees because the fee-recovery analysis focuses solely on the reasonableness and necessity of the *claimant's* attorney fees. The insurer characterizes the *El Apple* concurrence as involving a party's election to use its own fees as a comparator and not as insinuating an opposing party's attorney-billing information is inherently relevant.

### 3. The Requested Information Is Not Relevant

■■■■ Considering where the evidentiary burden lies with respect to a fee-shifting

61. *Wheelabrator Air Pollution Control, Inc. v. City of San Antonio*, 489 S.W.3d 448, 453 n.4 (Tex. 2016) (quoting *Wells Fargo Bank, NA v. Murphy*, 458 S.W.3d 912, 915 (Tex. 2015)).

62. *See In re Bent*, 487 S.W.3d 170, 184 (Tex. 2016) (orig. proceeding); *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 10 (Tex. 1991).

63. 945 S.W.2d 812, 818 (Tex. 1997) (citing TEX. DISCIPLINARY RULES PROF'L CONDUCT 1.04(b),

reprinted in TEX. GOV'T CODE tit. 2, subtit. G, app. A); *see El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 761 (Tex. 2012) (the *Arthur Andersen* factors are not exclusive) (citing TEX. DISCIPLINARY RULES PROF'L CONDUCT 1.04(b), reprinted in TEX. GOV'T CODE tit. 2, subtit. G, app. A).

64. *See El Apple I*, 370 S.W.3d at 766 (HECHT, J., concurring).

request and the focus of the material inquiry, we hold that an opposing party's hourly rates, total amount billed, and total reimbursable expenses do not, in and of themselves, make it any more probable that a requesting party's attorney fees are reasonable and necessary, or not, which are the only facts "of consequence." [65] This is so because an opposing party's litigation expenditures are not *ipso facto* reasonable or necessary; indeed parties who are not seeking to shift responsibility for their fees may freely choose to spend more or less time or money than would be "reasonable" or "necessary" for parties who are. [66]

Despite superficial appeal, such "an apples-to-oranges comparison" is analytically faulty:

> The most obvious flaw ... is that making such a comparison—where the benchmark for the award of plaintiff's attorney fees is "reasonableness"—would require the trial court to first determine whether the defendant's counsel billed a reasonable amount. Such a scheme does not make sense. [67]

In order for an opposing party's fees to serve as a relevant measure to any legitimate degree, the claimant would first have to establish those fees are themselves reasonable and necessary. Doing so necessitates consideration of other data points beyond the instant parties' expenditures. Because other evidence would be required to make an opposing party's fees relevant in the first instance, discovery concerning an opposing party's attorney-fee expenditures serves no purpose besides unnecessarily complicating the litigation in pursuit of a collateral matter. Evidence of an opposing party's fees lacks genuine probative value as a comparator for a requesting party's fees and, at best, would be merely cumulative or duplicative of other evidence directed to that inquiry. [68] Concisely stated, two wrongs don't make a right, and proving two rights is unnecessary when the only fact of consequence is whether one is right.

This conclusion accords with both a literal and practical reading of the first and third *Arthur Andersen* factors, which the homeowners cite as supporting the trial court's discovery order. With regard to the first factor—which considers the time, labor, and skill required and the novelty and difficulty of the questions involved—there can be little dispute that different motivations and different demands drive the time and labor spent, hourly rate charged, and skill required to defend litigation as compared to prosecuting a suit. [69] As to the third *Arthur Andersen* factor—the fee customarily charged in the locality for similar legal services—opposing parties are not providing "similar legal services" even in the same case, and the term "customarily" connotes a composite of fee information for the area rather than a single data point. Fundamentally, the tasks and roles of counsel on opposite sides of a case and the interests of opposing parties are so distinct that no "logical comparability" ex-

---

65. *See* Tex. R. Evid. 401.

66. However, a lawyer is constrained from entering into an arrangement for "an illegal fee or unconscionable fee," which is defined as "if a competent lawyer could not form a reasonable belief that the fee is reasonable." Tex. Disciplinary Rules Prof'l Conduct 1.04(a), *reprinted in* Tex. Gov't Code tit. 2, subtit. G, app. A.

67. *Burks v. Siemens Energy & Automation, Inc.*, 215 F.3d 880, 884 (8th Cir. 2000).

68. *See* Tex. R. Civ. P. 192.4(a).

69. *See, e.g., Mirabal v. Gen. Motors Acceptance Corp.*, 576 F.2d 729, 731 (7th Cir. 1978).

ists with respect to their attorney fees and billing rates.[70]

For example, a party subject to repeat litigation, such as an insurer or corporate defendant, may view the precedential value of a case more significantly than an opposing party who might not anticipate ever being involved in similar litigation again. Likewise, one side may have more at risk in a case.[71] Such considerations could reasonably justify greater expenditures in time, labor, and money than might be considered "reasonable" from the other party's perspective.[72] As the expression goes, one side of the litigation may have more skin in the game than the other.

Similarly, the nature of the attorney-client relationship may differ in ways that affect the rates charged and the demands on counsel's time. In that vein, ongoing attorney-client relationships often exist between corporate and governmental parties and their counsel and frequently involve negotiated rates that take into consideration future litigation work.[73] And "[l]arger organizations, often armed with more resources to expend on litigation than individuals, are frequently more demanding on their counsel in requesting constant updates on the litigation and detailed summaries on recent rulings, thereby requiring more time by their attorneys."[74] These considerations are especially pertinent in multi-party litigation, like the MDL proceedings here.

Even when working on the same tasks, attorneys litigating the same case do not approach those tasks in a sufficiently comparable manner to be genuinely probative of the degree of effort or skill required by one another. Indeed, while counsel for both sides may attend the same deposition, the attorney taking the deposition would reasonably be expected to expend more time and expense in preparing for the deposition than the attorney defending the deponent. In like manner, the contrast between responding to discovery requests and reviewing and analyzing information produced creates significant variations in time and money spent. Suffice it to say that counsel in the same case are not actually or even effectively performing "similar legal services" for the litigation.

**70.** *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 384 (5th Cir. 2011) (criticizing district court for allowing discovery of defense counsel's fees because "[n]o prior Fifth Circuit authority requires this comparison, nor does common experience" given the fundamentally different roles of opposing counsel, and that if "there were logical comparability, this court's decisions would have recognized it in the *Johnson* factors [which are similar to Texas's *Arthur Andersen* factors] or in past lodestar decisions").

**71.** *Cf. Ohio–Sealy Mattress Mfg. Co. v. Sealy Inc.*, 776 F.2d 646, 659 (7th Cir. 1985) ("We would normally expect a defendant to invest more in defending an antitrust suit than a plaintiff would invest in prosecuting it. After all, if a defendant loses, it must pay treble damages, the cost of defending, and the plaintiff's reasonable costs of bringing the suit; if the plaintiff loses, it is out only costs and whatever fees it paid its attorneys.").

**72.** *See Johnson v. Univ. Coll. of the Univ. of Ala. in Birmingham*, 706 F.2d 1205, 1208 (11th Cir. 1983) (hours needed by one side to prepare may differ substantially from that of opposing counsel, since the nature of the work may vary dramatically and the case may have far greater precedential value to one side than the other).

**73.** *Souryavong v. Lackawanna Cty.*, 159 F.Supp.3d 514, 544 (M.D. Pa. 2016) (noting a defense counsel's time and billing records are not helpful in assessing reasonableness and that this is "particularly true here where defense counsel represents a large governmental organization and Plaintiffs' counsel represents three (3) non-corporate individuals").

**74.** *Id.* (citing *Samuel v. Univ. of Pittsburgh*, 80 F.R.D. 293, 295 (W.D. Penn. 1978)).

Even if they were performing roughly the same legal services, a single law firm's fees and hourly rates in a particular case do not equate to a "customar[y]" fee for similar legal services:

> [W]hat a single law firm charges for a particular set of services and its choice of tactics in representing a given client are issues decidedly distinct from deciding what constitutes a customary fee. The [customary-fee] factor is plainly aimed at a *composite* of legal fees charged for a given service. Thus, focusing on one law firm's billing practices is unhelpful in determining what is "customary." The thrust of this lawsuit is whether [plaintiff's] fees, not those generated by [defendant], fall within the range of reason.[75]

Explaining the distinction, one court observed: "The particular rates charged by defendants' attorneys in this action reflect only the rates charged in one specific case by one specific law firm but do not have a bearing on the general hourly rate normally charged for similar legal work in the area."[76]

The fact that the insurer challenges the homeowners' attorney fees as excessive does not, in and of itself, alter the analysis.[77] A party can challenge another party's fee request as not "customary" even though that party also paid a fee that was not "customary," as long as the challenger does not rely on its own fees to prove the point.[78]

The homeowners cite several state and federal decisions for the proposition that an opposing party's attorney-billing information is at least minimally relevant and therefore the trial court has complete discretion to order discovery of such information or not.[79] While there is authority that may be construed as supporting the homeowners' discovery efforts, the jurisprudence reflects a wide variety of approaches to this issue among state and federal courts.[80] For the reasons explained above, we agree with those cases concluding such information is generally not discoverable and, in the ordinary case, "patently irrele-

---

**75.** *Duininck Bros. v. Howe Precast, Inc.*, No. 4:06-CV-441, 2008 WL 4411641, at *3 (E.D. Tex. Sept. 23, 2008) (emphasis added).

**76.** *Blowers v. Lawyers Coop. Publ'g Co.*, 526 F.Supp. 1324, 1328 (W.D.N.Y. 1981) ("The hourly rates charged to defendants by their attorneys in this particular case is simply not relevant in determining the prevailing hourly rate in the area. Plaintiff has not requested general information concerning the normal rates charged by defendants' attorneys in similar cases, but has particularized her Interrogatories.").

**77.** In arguing the contrary, the homeowners cite, among other cases, *Mendez v. Radec Corp.*, 818 F.Supp.2d 667, 668-69 (W.D.N.Y. 2011) ("Where the opposing party challenges the reasonableness of the rate or hours charged by the moving party's counsel, courts are more likely to find that evidence of the nonmoving party's counsel's fees are relevant and discoverable.").

**78.** *See id.* at 669 (finding defense counsel's billing records relevant and discoverable because defense counsel objected to the fee request as excessive and "used their own hours and rates as yardsticks by which to assess the reasonableness of those sought by plaintiffs").

**79.** *See, e.g., Paton v. GEICO Gen. Ins. Co.*, 190 So.3d 1047, 1052 (Fla. 2016); *Ex parte Vulcan Materials Co.*, 992 So.2d 1252, 1268 (Ala. 2008); *see also Naismith v. Prof'l Golfers Ass'n*, 85 F.R.D. 552, 562-64 (N.D. Ga. 1979).

**80.** *See, e.g., Montgomery v. Kraft Foods Glob., Inc.*, No. 1:12-CV-00149, 2015 WL 881585, at *2-3 (W.D. Mich. Mar. 2, 2015) (collecting contrasting authorities); *Marks Constr. Co. v. Huntington Nat'l Bank*, Civil Action No. 1:05CV73, 2010 WL 1836785, at *2-5 (N.D. W. Va. May 5, 2010) (same); *Cohen v. Brown Univ.*, CA 92-197 L, 1999 WL 695235, at *2 (D.R.I. May 19, 1999) (same).

vant." [81]

 Even if a party's attorney-billing information were marginally relevant to an opposing party's fee claim, discovery of such information should ordinarily be denied because the "probative value is substantially outweighed by the danger of . . . unfair prejudice, confusion of the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." [82] When requested information would manifestly foment these concerns and the probative value of the requested information is minimal, the discovery request is not "reasonably calculated to lead to the discovery of admissible evidence." [83]

· What's more, barring unusual circumstances, evidence about ·an·opposing party's attorney fees is not necessary for the requesting party to meet its ·burden of proof, but there is a genuine threat that allowing such discovery would give rise to abusive discovery practices. "Discovery is often the most significant cost of litigation" and a potential "weapon capable of imposing large and unjustifiable costs on one's adversary." [84] Especially in the context of multi-party litigation, costs are magnified by expanding the scope of discovery, ·and "the costs of multi-party litigation can drive defendants to settle regardless of the merits." [85] While litigants should have the

opportunity "to obtain the fullest knowledge of the facts and issues prior to trial," [86] ·our rules also.protect against unnecessary burgeoning of litigation costs.

In sum, barring unusual circumstances, an opposing party's attorney-fee information is not relevant because there is no reasonable expectation that the information will aid the dispute's resolution. Moreover, whatever marginal relevance might theoretically exist would not come close to surpassing competing concerns about undue prejudice, confusion of the issues, and abusive discovery practices, among others. Aside from lacking genuine probative value, discovery of an opposing party's attorney-billing information should generally not be permitted for these additional reasons.

### D. Expert Discovery

 Attorney-billing information may be discoverable by virtue of the opposing party designating its counsel as a testifying expert. Per Rule 192.3, a party is entitled to expert discovery of facts known by the testifying expert relating to the expert's mental impressions and opinions formed, any bias of the expert witness, and documents provided to or reviewed by the

81. *See, e.g., In re Tex. Mut. Ins. Co.*, 358 S.W.3d 869, 872 (Tex. App.—Dallas 2012, orig. proceeding); *In re AIG Aviation (Tex.), Inc.*, No. 04-04-00291-CV, 2004 WL 1166560, at *1 (Tex. App.—San Antonio May 26, 2004, orig. proceeding) (mem. op.); *MCI Telecomms. Corp. v. Crowley*, 899 S.W.2d 399, 403 (Tex. App.—Fort Worth 1995, orig. proceeding).

82. Tex. R. Evid. 403; *see also* Tex. R. Civ. P. 192.4.

83. Tex. R. Civ. P. 192.3(a).

84. *In re Alford Chevrolet–Geo*, 997 S.W.2d 173, 180 (Tex. 1999) (orig. proceeding) (citing Wayne D. Brazil, *Views From the Front Lines:*

*Observations by Chicago Lawyers About the System of Civil Discovery*, 1980 Am. B. Found. Res. J. 219, 229, and Frank H. Easterbrook, *Discovery as Abuse*, 69 B.U. L. Rev. 635, 636 (1989)).

85. *Id.* (citing *CSR Ltd. v. Link*, 925 S.W.2d 591, 598 (Tex. 1996) (orig. proceeding) (Gonzalez, J., concurring)).

86. *Ford Motor Co. v. Castillo*, 279 S.W.3d 656, 664 (Tex. 2009) (quoting *Axelson, Inc. v. McIlhany*, 798 S.W.2d 550, 553 (Tex. 1990) (orig. proceeding)).

expert in anticipation of testimony.[87] Additionally, the work-product privilege does not apply to "information discoverable under Rule 192.3 concerning experts, trial witnesses, witness statements, and contentions."[88] Thus, the tactical decision to designate counsel as a testifying witness provides the opposing party with the means to access information and attorney work product not otherwise available under the general scope of discovery.[89]

 In those circumstances, however, the requesting party must follow the discovery rules applicable to testifying experts. Importantly, a party is limited in the tools available to discover information concerning expert witnesses, even though the information may otherwise be within the scope of testifying-expert discovery. "Rule 192.3(e) sets forth the *scope* of information that parties may discover about a testifying expert.... Rule 195 addresses the *methods* for obtaining such information, limiting testifying-expert discovery to that acquired through disclosures, expert reports, and oral depositions of expert witnesses."[90] To minimize undue expense and curb discovery abuse,[91] Rule 195 does not provide for interrogatories or requests for production like the discovery requests at issue here.[92] Further, because the disputed discovery requests are not permissible methods of obtaining information discoverable under Rule 192.3(e), the exception to the work-product privilege in Rule 192.5(c)(1) does not apply.[93]

While the distinctions may seem like a technicality, the limitations on expert discovery ensure discovery is narrowly tailored to permissible purposes. In this case,

---

87. Tex. R. Civ. P. 192.3(e)(3)–(6).

88. Tex. R. Civ. P. 192.5(c)(1).

89. If a party is concerned about the discovery of its privileged information through expert discovery, the party may designate another expert in the first place or, presumably, withdraw a currently designated expert and name another. *See In re Christus Spohn Hosp. Kleberg*, 222 S.W.3d 434, 445 (Tex. 2007) (orig. proceeding).

90. *In re Ford Motor Co.*, 427 S.W.3d 396, 397 (Tex. 2014) (orig. proceeding) (emphases added).

91. We observed in *In re Ford Motor Co.* that:

The official comments to Rule 195 articulate a goal of minimizing "undue expense" in conducting expert discovery. This goal comports with efforts by this Court and others to curb discovery abuse through the implementation of carefully crafted principles and procedures. We have expressed concerns about allowing overly expansive discovery about testifying experts that can permit witnesses to be subjected to harassment and might well discourage reputable experts from participating in the litigation process.

*Id.* (citations and internal quotations omitted).

92. *See* Tex. R. Civ. P. 195.1 ("A party may request another party to designate and disclose information concerning testifying expert witnesses *only* through a request for disclosure under Rule 194 and through depositions and reports as permitted by this rule." (emphasis added)). Via requests for disclosure, as authorized by Rule 195.1, a party is entitled to limited expert-witness document discovery, including "all documents, tangible things, reports, models, or data compilations that have been provided to, reviewed by, or prepared by or for the expert in anticipation of the expert's testimony." Tex. R. Civ. P. 194.2(f)(4); *see also* Tex. R. Civ. P. 192.3(e) (delineating the scope of expert discovery), 195.4 ("In addition to disclosure under Rule 194, a party may obtain discovery concerning the subject matter on which the expert is expected to testify ... and other discoverable matters, including documents not produced in disclosure, only by oral deposition of the expert and by a report prepared by the expert under this rule.").

93. Tex. R. Civ. P. 192.5(c)(1) (excepting from work-product protection "information discoverable under Rule 192.3 concerning experts, trial witnesses, witness statements, and contentions").

for example, the requested discovery seeks all billing information without any showing that those records "have been provided to, reviewed by, or prepared by or for the expert in anticipation of the expert's testimony."[94] By asserting the requested discovery is proper based on counsel's designation as an expert witness, the homeowners circumvent the requirement that there be at least some nexus between the expert and the requested information. While counsel surely has reviewed his own bills and is knowledgeable about his own billing practices, he has not necessarily reviewed the billing information of other attorneys representing the insurer in the MDL cases.[95]

Because the homeowners chose not to use Rule 195's permissible discovery methods to request insurer's expert information, the trial court erred insofar as it relied on Rule 192.3(e) in determining the scope of discovery. Additionally, the Rule 192.5(c)(1) work-product exception does not apply to requested information under these particular discovery methods and thus the trial court's discovery order improperly compels discovery of work-product privileged information.

### E. Response to Dissent

"The line between who is a Rule 702 expert witness and who is a Rule 701 [fact] witness is not always bright."[96] But when a witness is properly disclosed and designated as an expert and the main substance of the witness's testimony is based on specialized knowledge, skill, experience, training, and education, "the testimony will generally be expert testimony within the scope of Rule 702."[97] Here, the insurer (1) challenged the reasonableness and necessity of the homeowners' attorney fees, but has not requested its own fees; (2) stipulated that it will not use its own billing information to contest the homeowners' attorney fees; (3) designated one of its attorneys as an expert based upon his experience, education, and skill; and (4) stated that counsel "is expected to testify as to reasonable and necessary attorney fees for a case of such complexity as this case, pending in Hidalgo County, Texas."

The dissent's analysis conflates the role of an expert with the role of a fact witness and ignores the distinction between the discovery rules associated with those respective roles. We do not disagree with the dissent that the insurer's counsel can be cross-examined at trial in his role as an expert witness; consequently, discovery as to his credibility, biases, and facts relating to or forming the basis of his mental impressions and opinions is permitted under the expert-discovery rules.[98] But the homeowners did not use permissible methods for obtaining expert discovery.[99] The discovery methods matter; we require—as our rules of civil procedure require—that parties utilize permissible tools for requesting expert discovery.

94. Tex. R. Civ. P. 194.2(f)(4).

95. The record illustrates the point with counsel's testimony in the *Amaro* case, which the homeowners rely on as the impetus for the disputed discovery: "I can give you the range of what my firm has billed. What I cannot give you today are the fees incurred and the amount that [co-counsel] has billed on it."

96. *Reid Rd. Mun. Util. Dist. No. 2 v. Speedy Stop Food Stores, Ltd.*, 337 S.W.3d 846, 850-52 (Tex. 2011).

97. *Id.* at 851.

98. *See* Tex. R. Civ. P. 192.3(e)(3)–(6).

99. Tex. R. Civ. P. 195.1 (limiting a party's expert discovery tools to only a request for disclosure and through depositions and reports).

The dissent also misunderstands our holding regarding the attorney work-product privilege. The dissent agrees that compelling en masse production of a party's billing records invades the work-product privilege but, somewhat confusingly, asserts the privilege is not impinged because the order to produce billing records was limited to the billing records in this case and redaction would be sufficient to protect the privilege.[100] We confronted a similar situation in *National Union Fire Insurance Co. v. Valdez* and squarely held that production of an attorney's entire case file would reveal an attorney's thought processes and strategies, even if some of the documents in the file would not otherwise be privileged.[101] We did not provide for redaction then, nor do we conclude redaction would be adequate in this context. Redaction is simply not sufficient to protect the privilege or mask an attorney's thought processes and strategies whether production of an entire litigation file is at issue or en masse production of attorney billing records is involved. Thus concerns analogous to those in *Valdez* compel the same conclusion in this case.

Finally, the dissent's preservation argument misses the mark.[102] The insurer's opposition to discovery is two-pronged: (1) the requested information is privileged and irrelevant under the general scope of discovery, and (2) the insurer's designation of its attorney as an expert witness does not change this fact. Whether designation of counsel as an expert alters the discovery analysis—as the homeowners and dissent maintain—is well within the issue presented.

## III. Conclusion

Making a claim for attorney fees or using attorney fees as a comparator in challenging an opponent's fee request puts a party's attorney fees at issue in the litigation. In addition, designating counsel as an expert opens the door to expert-witness discovery as provided and limited by the Texas Rules of Civil Procedure. Outside of these scenarios and absent unusual circumstances, information about an opposing party's attorney fees and expenses is, in the ordinary case, privileged or irrelevant and, thus, not discoverable. Given the circumstances in this case and the nature of the discovery requests at issue, we conditionally grant mandamus relief and direct the trial court to vacate its order compelling National Lloyds Insurance Company, Wardlaw Claims Service, and Ideal Adjusting to answer requests for production 1, 2, 4, and 5, and interrogatories 1, 2, and 3. The writ will issue only if the trial court fails to do so.

Justice Johnson filed a dissenting opinion, in which Justice Lehrmann and Justice Boyd joined.

Phil Johnson Justice, Dissenting

Relators (collectively, National Lloyds or the company) designated Scot Doyen, an attorney representing them in these lawsuits, to testify regarding attorney's fees the homeowner–plaintiffs seek to recover. The question posed by the parties and ruled on by the trial court is whether information about his fees, expenses, and billing information, as well as that of other attorneys representing National Lloyds in the suits is discoverable. National Lloyds maintained in the trial court and now

---

**100.** *Post* at 823.

**101.** 863 S.W.2d 458, 460-61 (Tex. 1993) (orig. proceeding); *see also supra* notes 38-46 and accompanying text.

**102.** *Post* at 824.

maintains in this Court that the information is both irrelevant and privileged, either as attorney-client communications or attorney work product. It has done so despite not making a record by producing any documents for examination. The trial court disagreed as to relevance, but wisely authorized—and directed—National Lloyds to respond to the discovery requests after redacting privileged information from any documents produced.

This Court, addressing an issue not raised by the parties, says the homeowners used improper discovery methods by using interrogatories and requests for production of documents. It follows that up by saying that the methods would not have mattered anyway because the information is not relevant. The first reason the information is irrelevant, says the Court, is because National Lloyds has disavowed any intent to use its attorney's fees as a measure for challenging the plaintiffs' claims. The second reason is because whatever relevance the information might have is slight when compared to competing concerns such as undue prejudice, confusion of the issues, and abusive discovery practices. Thus, the Court agrees with National Lloyds and determines that the trial court abused its discretion by directing even the limited discovery it ordered.

I disagree and would deny relief.

## I. Standard of Review

Generally, parties may obtain discovery "regarding any matter that is not privileged and is relevant to the subject matter of the pending action, whether it relates to the claim or defense of the party seeking discovery or the claim or defense of any other party." TEX. R. CIV. P. 192.3(a); *Ford Motor Co. v. Castillo*, 279 S.W.3d 656, 664 (Tex. 2009). Trial courts are afforded broad discretion in determining and controlling the scope of discovery. *See*

*In re Am. Optical Corp.*, 988 S.W.2d 711, 713 (Tex. 1998). Trial court rulings regarding discovery are reviewed for abuse of discretion. *In re Nat'l Lloyds Ins. Co.*, 449 S.W.3d 486, 488 (Tex. 2014). There is no presumption that documents are privileged, and the party resisting the discovery bears the burden of pleading and proving an applicable privilege. *In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d 218, 223, 225 (Tex. 2004). Denial of discovery is proper only if there is "no possible relevant, discoverable" material to support, or lead to evidence that would support, claims or defenses of a party. *Ford Motor Co.*, 279 S.W.3d at 664.

## II. Discussion

### A. Methods of Discovery

National Lloyds designated Doyen, whose firm is one of those representing it in the pending cases, as an expert witness on attorney's fees. After Doyen testified in a similar-type case and gave opinion testimony as to the plaintiff's attorney's fee request, based in part on his personal knowledge from representing a defendant in the case, the homeowners sought permission to serve interrogatories and requests for production regarding, as to each case, the time Doyen and his firm spent on the case and the firm's fees and expenses billed to and paid by National Lloyds. They sought the same information regarding all the lawyers representing National Lloyds in the cases. National Lloyds objected that the requested discovery was "overly broad and seeks information that is both irrelevant and protected by the attorney-client and work-product privileges." *Ante* at 801. A special master heard the dispute. National Lloyds neither offered testimony nor produced any documents for examination by the special master or trial court. The special master recommended, and the trial court ordered,

that National Lloyds respond to the discovery requests as modified by the court, except it specified in its order that "specific records may be redacted for content protected by an appropriate privilege."

National Lloyds did not assert in the trial court that the homeowners improperly requested discovery by using interrogatories and requests for production. It did not assert in the court of appeals that the trial court abused its discretion by authorizing discovery by means of interrogatories and requests for production instead of requests for disclosure, depositions, and reports as permitted by Rule 195. *See* TEX. R. CIV. P. 195 (entitled "Discovery Regarding Testifying Expert Witnesses"). Nor has it made that argument here. The issue of whether the homeowners used proper discovery methods when National Lloyds did not make that challenge is not an issue the trial court had a duty to raise and rule on sua sponte. *Compare, e.g., Rusk State Hosp. v. Black*, 392 S.W.3d 88, 103 (Tex. 2012) ("Subject matter jurisdiction cannot be waived or conferred by agreement, can be raised at any time, and must be considered by a court sua sponte."). We do not have a duty to sua sponte raise the issue, either. *Id.* To the contrary, under this record we should do as the trial court did and limit ourselves to ruling on the issues presented by the parties.

In my view, the trial court did not abuse its discretion by addressing only the issues presented by the parties and not granting relief on grounds National Lloyds did not urge. *See McKinney v. Nat'l Union Fire Ins. Co.*, 772 S.W.2d 72, 75 (Tex. 1989) ("[T]he objecting party must assume the burden of establishing its privilege, immunity or *other objection* to the discovery request." (emphasis added)). Moreover, interrogatories and requests for production of documents are appropriate for discover-

ing information related to Doyen as a person with knowledge of relevant facts regarding attorney's fees in cases in which he has participated in trial preparation, as is discussed more fully below. National Lloyds should not get to convert a witness from one with knowledge of relevant facts into solely an expert witness simply by designating the witness as an expert. And the trial court would not have abused its discretion by considering Doyen as a fact witness as well as an expert for discovery purposes—even if National Lloyds had argued he was not a fact witness, which it has not.

In light of the foregoing, I disagree with the Court's conclusion that "[b]ecause the homeowners chose not to use Rule 195's permissible discovery methods to request insurer's expert information, the trial court erred insofar as it relied on Rule 192.3(e) in determining the scope of discovery." *See ante* at 815.

## B. Relevance

Going beyond the issue of methods of discovery, the Court concludes that the trial court abused its discretion by ordering National Lloyds to respond to the following discovery requests because they did not seek relevant information:

Interrogatories:

(1) State the hourly rate of any and all attorneys who have provided legal services to this Defendant *in this case*;

(2) State the total amount billed by each law firm providing legal services to this Defendant *in this case* up to and including the time of trial; and

(3) State the total amount of reimbursable expenses incurred by any law firm providing legal services to this Defendant *in this case* up to and including the time of trial.

Requests for Production:

(1) Produce all billing invoices received by Defendant and/or any of the firms the named attorneys are affiliated with or employed by, *in connection with this case*;

(2) Produce all payment logs, ledgers, or payment summaries showing all payments paid to Defendants' attorneys and/or any of the firms that the named attorneys are affiliated with or employed by, *in connection with this case*;

. . .

(4) Please produce all documents that show the flat rate, if any, being paid to Defense Counsel and/or any of the firms that the named attorneys are affiliated with or employed by, *in connection with their services on this case*; and

(5) Please produce all documents related to audits of the billing and/or invoices of Defense Counsel and/or any of the firms that the named attorneys are affiliated with or employed by, which were performed on behalf of Defendant in regards to the attorney services received by Defendant.

(emphasis added). The record clarifies that Request for Production number five is limited to documents in the particular case in which discovery is sought.

The amount of reasonable and necessary attorneys' fees to which the plaintiffs are entitled, if any, will be answered by the factfinder—in these cases, presumably a jury, as jury demands have been made. *Transcontinental Ins. Co. v. Crump*, 330 S.W.3d 211, 230 (Tex. 2010) ("In general, the reasonableness of statutory attorney's fees is a jury question." (quoting *City of Garland v. Dall. Morning News*, 22 S.W.3d 351, 367 (Tex. 2000))). The discovery was sought only after Doyen had both been designated to testify in these cases and had testified in another case in opposition to a plaintiff's attorney's fee request. And there can be no doubt that if Doyen testifies, his testimony will be in opposition to the fees requested by the homeowners: trial lawyers do not call witnesses to testify in *support* of the opposing party's position.

During the discovery hearing the homeowners' attorneys explained that Doyen's testimony in the prior, similar-type case prompted the discovery requests here. In that case he gave opinion testimony based in part on personal knowledge from his own participation in the case. The homeowners' desire for information is understandable, given that when Doyen was cross-examined in the earlier case about the amount of time and fees he and his firm billed for handling the case, he could not recall details of those matters. Given that previous experience, the homeowners' lawyers reacted rationally: they sought specific information and records with which to arm themselves to test Doyen's testimony and opinions should his recollection again falter, or his memory as to the firm billings be incomplete. Moreover, just in case there were other firms involved in representing National Lloyds in any of these matters, the plaintiffs' discovery requests inquired about those firms, also. For if litigation tasks in a case are split among several firms, a true picture of the amount of time spent and fees billed by attorneys representing National Lloyds can only be presented by disclosure of the time and billings on the case from all the firms performing services.

When a witness testifies based on personal knowledge, even in part, matters within that witness's personal knowledge, subject to other exclusionary rules of evidence, become relevant and fall within the scope of cross examination. TEX. R. EVID. 602, 611(b); *see also Reid Rd. Mun.*

*Util. Dist. No. 2 v. Speedy Stop*, 337 S.W.3d 846, 850–52 (Tex. 2011). There is no dispute Doyen has personal knowledge of his own firm's billing rates and at least part of the activities and time spent in litigating the cases by both his firm and the plaintiffs' lawyers. That surely includes personal knowledge of, or familiarity with, the complexity of the issues and the time various activities took or reasonably should have taken; the attorney experience level appropriate to litigate the case; the amount of time necessary to prepare for the various activities such as hearings, discovery requests and responses; and very likely other facts and factors affecting the reasonableness and necessity of the attorney's fees sought. *See Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818–19 (Tex. 1997) (setting out a non-exhaustive list of factors to be considered when determining whether an attorney's fees request is reasonable). His designation as an expert witness does not preclude his also being a fact witness and being examined as such with respect to the attorney's fees question. *See Reid Rd.*, 337 S.W.3d at 850–52. If a witness with knowledge of relevant facts about a contested matter such as the attorney's fee issue is called to testify, even as an expert, it is not subject to debate that the witness is subject to cross examination, including cross examination to test his credibility, biases (if any), and the bases for his testimony. *See* TEX. R. EVID. 611(b) ("A witness may be cross-examined on any relevant matter, including credibility."); *Davidson v. Great Nat'l Life Ins. Co.*, 737 S.W.2d 312, 314 (Tex. 1987); *Goldberg v. Kelly*, 397 U.S. 254, 269 (1970). Those are all matters the jury will be entitled to consider in weighing Doyen's testimony if the cases are tried and he testifies; certainly information reflecting on them is discoverable.

The Court says that

> [U]nder [these] circumstances, (1) compelling en masse production of a party's billing records invades the attorney work-product privilege; (2) the privilege is not waived merely because the party resisting discovery has challenged the opponent's attorney-fee request; and (3) such information is ordinarily not discoverable.

*Ante* at 798–99 (citing TEX. R. CIV. P. 192.5(b)). But the quoted language does not apply. Here, the trial court did not order National Lloyds to produce its billing records en masse, nor does anyone assert that a privilege has been waived by the company's challenging the plaintiffs' attorney's fees request. To the contrary, the special master recommended, and the trial court specifically ordered, that privileged information did not have to be disclosed—National Lloyds was to redact such information before producing its records. Further, no one claims the information is ordinarily discoverable. But it is no ordinary situation for a party's trial attorney to be designated as a testifying expert to dispute the opposing party's attorney's fee request—at least, it has not been. Things may well change after this case issues.

Following its determination that some of the requested information is protected by the work-product privilege, a determination with which I do not disagree, the Court turns to whether the requests for hourly rates, total amounts billed, and total reimbursable expenses seek discoverable information. The Court notes that this question relates to the scope of discovery and that the proper scope "extends to any unprivileged information that is 'relevant to the subject matter' of the pending action, even if inadmissible at trial, so long as the information sought 'appears reasonably calculated to lead to the discovery of admissible evidence.'" *Ante* at 808 (quot-

ing TEX. R. CIV. P. 192.3(a)). But the Court then says:

> To the extent factual information about hourly rates and aggregate attorney fees is not privileged, that information is generally irrelevant and nondiscoverable because it does not establish or tend to establish the reasonableness or necessity of the attorney fees an opposing party has incurred.

*Ante* at 799 (citing TEX. R. EVID. 401; TEX. R. CIV. P. 192.3). I disagree. First of all, the information clearly tends to establish the reasonableness and necessity of attorney's fees National Lloyds has incurred in each case. And the information sought, at a minimum, *might* be relevant to both the reasonableness and necessity of the plaintiffs' attorney's fees in each case to which the defendant's fees apply.

While there are certainly times when counsel's experience, the roles undertaken by counsel, and varying motivations make a direct comparison of time spent on a case and fees charged for it inapt, there are just as certainly times when circumstances in particular cases might make a comparison highly appropriate. *See El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 766 (Tex. 2012) (Hecht, J., concurring). When a party designates the attorney representing it in a case to testify and dispute another party's fee request, the designation implies that the attorney will rely on his own experience in trying and billing cases comparable to the one in which he is designated to testify. If the attorney testifies and mitigating factors make a fee comparison between the parties inapplicable, then objections can be lodged based on the status of the evidence at the time the attorney testifies. *See* TEX. R. EVID. 611(b) (providing that "[a] witness may be cross-examined on any relevant matter, including credibility."); TEX. R. EVID. 601 (defining "relevant evidence" as evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable). In any event, the attorney will have an opportunity to address the subject and make any necessary clarifications during re-direct examination. And what better exemplar could there be of comparing apples to apples than comparing attorney activities in the very case in which the fees are sought? *See El Apple I*, 370 S.W.3d at 766. The trial court apparently decided that this might be such a case. In my view the trial court did not abuse its discretion by that decision and by allowing the limited discovery it ordered.

Further, the trial court could have, in its discretion, considered the information sought as being relevant for cross examination of lawyer Doyen regarding the credibility of his opinions and testimony. Witness credibility is important regarding contested issues, and attorney's fees are no different. *See Howsley & Jacobs v. Kendall*, 376 S.W.2d 562, 565 (Tex. 1964). The Texas Rules of Evidence expressly recognize that witnesses may be cross examined on their credibility. TEX. R. EVID. 611(b). Thus, information used to impeach the credibility of a witness, even an attorney testifying about another party's fees, is relevant, as the plaintiffs argued to the special master:

> We believe that we're entitled to know how much the Defendants spend on attorneys' fees and the number of hours that they billed for, in order to counter the arguments and testimony that we heard [from Doyen in the previous trial].

The Court gives several reasons for concluding that the requested information is not relevant. First, it says that an opposing party may freely choose to spend more or less than would be "reasonable" in comparison to the requesting party. *Ante* at 808. But deciding what is a reasonable fee

for a case is a jury question. Certainly, a party has the right to spend whatever it chooses on a case. But attorneys for both sides are professionally obligated to charge reasonable fees. TEX. DISCIPLINARY RULES PROF'L CONDUCT 1.04(a). Beyond that, that party's billing choices should not preclude the party whose attorney's fees it is contesting from discovering information about the time spent and fees charged on a case by a testifying witness who has been part-and-parcel of representing the contesting party in the suit. This holds especially true when, as happened with Doyen, the designated witness has already demonstrated in previous trial testimony in a similar case that he could not recall specifics regarding his firm's time, activities, and billings for the case.

Second, the Court says that comparisons between attorney's fees of plaintiffs and defendants are inapt because differing motivations of the parties impact the time spent, rate charged, and skill required. *Ante* at 808. That may be true to some extent, but the fact remains that all the lawyers are representing clients in the same lawsuit and doing much of the same work, such as filing pleadings, attending the same depositions and hearings, doing pretrial orders and briefing, preparing to examine and cross examine the same pool of witnesses, working on the same jury charge, and preparing to argue the same case to the same jury. There is necessarily symmetry in a great deal of the activity undertaken by attorneys representing clients in the same lawsuit, even though they represent opposing parties. That symmetry is relevant for cross-examination purposes if Doyen testifies regarding such activities and is critical of the homeowners' attorney's fees request as to those activities.

Third, the Court says that the tasks and roles of counsel on opposite sides of a case vary fundamentally, so even in the same case, the legal services rendered to opposing parties are not "fairly characterized" as similar. *Ante* at 808. I disagree. There are some differences in the typical activities undertaken by counsel for opposing parties in a lawsuit, but most of the activities are of the same general nature. And if they are not, the testifying witness will have an opportunity to explain the differences. In any particular case the issues generally become apparent early on. From that point, preparation for the parties generally entails similar types of activities— even though likely not exactly the same activities—as set out above, and others such as researching points of law that might arise, conferring with and corresponding with the client regularly, interviewing witnesses, attending mediation, and preparing witnesses for trial. Any differences go to the weight of the evidence, not to whether there is some relevancy between the level and types of activities and time spent by the attorneys for each side. At the least, there is enough similarity and relevance for the trial court to have determined that the limited discovery it ordered was warranted.

Finally, the Court says that a single law firm's fees and rates do not determine the "customary" range of fees in a general locality for similar services. *See Arthur Andersen & Co.*, 945 S.W.2d at 818 (noting that the fee customarily charged in the locality is a factor to be considered in determining the reasonableness and necessity of attorney's fees). True. But saying that a single firm's fees and rates do not *determine* a customary or reasonable fee is not the same as saying that firm's fees and rates are not *relevant* to the question. To the extent that "customary" fees are in issue, an opposing party's fees and rates are certainly *some*evidence of the customary fees and rates in that locality. As such,

they are at least relevant to what a customary or reasonable fee would be.

In sum, it is one thing to say that evidence of National Lloyds' attorneys' time and fees in a particular case is inadmissible in that case when an opposing party is seeking attorney's fees in the case. Admissibility will depend on the evidence and what has transpired at trial before such evidence is offered, and the purpose for which it is offered. *Cf. In re E.N.C.*, 384 S.W.3d 796, 805 (Tex. 2012); *see also* TEX. R. EVID. 401 (requiring that the evidence be of a "fact ... of consequence in determining the action"). But it is quite another thing to say that the trial court abused its discretion by determining evidence of the time and fees of National Lloyds' attorneys is discoverable to the limited extent it ordered here.

## C. And Further ...

The Court asserts that production of any part of an attorney's file, even redacted billing information, would conflict with our holding in *National Union Fire Insurance Co. v. Valdez*, in which we decided that requests for en masse production of an attorney's entire litigation file was improper because it called for disclosure of privileged, work-product materials. *Ante* at 816 (citing *Nat'l Union Fire Ins. Co. v. Valdez*, 863 S.W.2d 458, 460 (Tex. 1993)). Not so. The requests for discovery in this case are not even close to the requests we considered in *Valdez*. An attorney's entire file includes notes about attorney-client conferences, reports to clients, trial strategies and preparation, and case evaluation; just to mention a few areas and matters that are undisputedly privileged. No one doubts that those materials "necessarily [reveal] the attorney's thought processes concerning the prosecution or defense of the case." *See Valdez*, 863 S.W.2d at 460.

The requested billing information in this case is a narrow sliver of the entire file, and in *Valdez* we were careful to note that the decision "does not prevent a party from requesting specific documents ... relevant to issues in a pending case, even though some or all of the documents may be contained in an attorney's file." *Id.* The information and documents sought here are limited, specific, and unquestionably relevant to an issue in this case. The trial court's authorizing National Lloyds—by a very general and nonspecific order—to redact privileged information before producing documents, was fully adequate to protect privileged information absent National Lloyds demonstrating otherwise.

To the extent the Court implies that the homeowners seek to use the requested discovery to independently support their claim for attorney's fees, National Lloyds does not claim that they do. As the homeowners argued to the special master, the discovery was sought only after Doyen's designation as a witness regarding the homeowners' attorney's fees claim, and after he testified in opposition to the fee request of a homeowner in a different trial. As discussed, the homeowners say they only seek the information to prepare for cross examining Doyen. So, any discussion about using the fees National Lloyds' lawyers charged as proof of the homeowners' attorney's fees is misplaced.

Moreover, the discovery requests can hardly be excessively burdensome or a great expansion of the trial that will take place. First, National Lloyds did not claim that they are. Second, it is common knowledge among civil trial lawyers that insurance companies require regular, detailed billing invoices from their attorneys. Invoices generally set out, at the very least, the date, amount of time taken, and description of activity for which the company is being billed. That information is most

likely either computer generated or transmitted to the company via paperless billing methods. Either way, or even in the event that the billing invoices are paper instead of electronic, the invoices and payments made in response will be readily and efficiently available on demand. It is also common knowledge in the industry that insurance companies may have the fee invoices of their attorneys audited, frequently by independent companies whose business it is to review attorney's fee bills and report unusual or out-of-line time or activities to the auditing company's clients—indeed, the phrase "customary fee" comes to mind regarding such audits. *See Arthur Andersen & Co.*, 945 S.W.2d at 818. Assuming National Lloyds follows industry norms, the responses to discovery ordered by the trial court should take a nominal amount of time and effort, even including the time to redact privileged information as authorized by the trial court. And if National Lloyds does not follow industry norms, it did not mention it in the trial court, nor did it assert or offer evidence that producing the requested information and redacted documents would take an unusual or excessive amount of time, effort, or expense. In any event, if any such problems arise, they can be presented to the trial court for resolution.

As the Court explains, this situation has been brought about by National Lloyds' own litigation choice to designate its trial attorney to testify as an expert. *Ante* at 807 n.54 (noting that parties concerned about disclosing fees and expenses paid to trial counsel can designate another expert witness or withdraw the designation of trial counsel as a witness). What National Lloyds should not be able to do is have it both ways by using one of its trial attorneys to critique the time, fees, and other details of the homeowners' attorney's fees request, while screening from view its own attorneys' time and fees in the same case

for the same or similar activities. The materials the trial court ordered discovered, at the very least, may lead to admissible evidence that many, if not most, jurors would consider relevant in weighing the testimony of a witness such as Doyen—how much time did the insurance company's lawyers spend on the case in regard to the items those lawyers criticize as to the homeowners' attorneys, and what did they and their insurance clients consider a reasonable fee for those efforts?

## III. Conclusion

The trial court's reasonably cautious approach as to what interrogatories must be answered and what discovery must be produced does not demonstrate an abuse of discretion. There is, at a minimum, possible relevance of the discovery sought to an element of the pending case. *See Ford Motor Co.*, 279 S.W.3d at 664. There simply has been no showing that National Lloyds' complying with the trial court's discovery order would result in undue prejudice or abusive discovery practices. It most certainly would not result in confusion of the issues—it is a discovery order, not a ruling on the admissibility of the information or documents sought.

I would deny mandamus relief. Because the Court does otherwise, I respectfully dissent.